Stephen Weeks on behalf of Mr. Blomquist and Cheryl Cummings. Very well. Police officers take an oath to uphold the law. A political appointee should not have the power to direct the chief of police to order the arrest of an individual who is sitting at a restaurant having a beer. This case is important, but before I get into the importance of it, I do want to inform the court of a development that has happened recently in the sister cases that are in state court. There was a settlement on October 9th, I understand? That's correct, your honor. We've reached a term settlement. We haven't actually signed the agreements. We're still in the And what is the effect on this case? It has no effect on this case. The party specifically agreed that this case would not be impacted. As far as my client's rights, they are being given full rights to have access to the area, which they were disputing throughout the whole time, as well as many of their neighbors. Okay. But in terms of the cases, we have it before us. In light of the plaintiff's concession to the district court that this action does not challenge the town's repudiation of the public easement. I mean, those are the facts. I didn't hear you. I'm sorry. All right. In light of the plaintiff's concession in the district court in this case that this action does not challenge the town's repudiation of the public easement, what is your legal basis in asserting that Blomquist is entitled to be present at McClintick's restaurant? Thank you, your honor. The issue as to whether or not Mr. Blomquist had a right. Oh, I'm sorry. I didn't mean to mispronounce his name. It's a common mistake. I made it myself a few times when I first started representing the gentleman. The easement was a public easement that ran up through, intersected the restaurant, and continued on beyond the restaurant. In Arizona, anyone who is the underlying landowner who builds on an easement builds at their own risk, and individuals are still allowed to traverse the easement as it's recorded. The town of Marana attempted to abandon the easement through a town hall process. The problems were that the easement was not within the town of Marana. Parts of it were, but other parts were not. As a result, the town of Marana did not have control under Arizona law. That was the subject of another litigation. That is what was being challenged in the June 2009 lawsuit against the town of Marana, that you don't have control, you don't have the right, and to the extent that you are trying to exert control, what you are doing is unconstitutional and in violation of Arizona's gift clause. It's also in violation of Arizona's open meeting clause requirements. So how would that be a public forum? Well, all public roads throughout history have been deemed to be public forums. The town of Marana says, well, we didn't take control of this easement and didn't deem it a public forum, but streets, parks, and the like are consistently deemed to be public forum, and you are allowed to make your expression there. And in this case, this was a very important public issue. This is an easement that led from outside of a mountain range up to the Tortolita Mountains, going into, it's the only vehicular access that went into Tortolita Mountain Park and looped on back down around. The public portion, the part that was actually publicly deeded, went about a third of the way of that entire loop, but the entire loop has been used by the public since the 60s. And what happened was the developer initially decided he didn't want the public accessing it. Even though it was on the plat, it was listed as public access. He went and he blocked it. A lawsuit was filed. He then moved it into a bankruptcy court when he filed for bankruptcy. Then a few months after the bankruptcy was filed, the town of Marana held an emergency meeting. Well, the meeting was an emergency, but they added an item as an emergency item to the agenda within the 24 hours before the meeting took place. Then the vote took place as an emergency item so that it could not be challenged by referendum in the state of Arizona. The only alternative left was to challenge what the town of Marana did through legal action. We filed a challenge, but the town of Marana knew that this was a contested case. Do you have a judgment in that action? Excuse me, sir? Do you have a judgment in that action? That's the action that we are in the process of settling, Your Honor. Right. So we don't have a judgment. We don't know whether this has been deemed abandoned. We don't know what the legal status is. The town says it's abandoned. You filed an action challenging that. You settled it on terms we don't know. What are we to make of that in terms of whether or not there was ever existing a public right of way that might arguably be a public forum? Well, actually, there is no judgment or decision from a court that this is a public easement. However, the recorded documents listed as a public easement in the town of Marana, when they did it they said they banned it and they contend their action was legal. You contend it was not. Correct, Your Honor. And we haven't resolved that issue. Well, except that if you look at the quitclaim deeds themselves that were issued, they say they only give away what rights the town has. And Arizona follows Is it possible, when you said that whatever happens in this other lawsuit doesn't affect this, is it possible that it wasn't a public forum on the date in question here, it could be a public forum at a date in the future, depending on what that lawsuit decides? Well, I mean, we can't go there on that. Well, right. But the issue for this Court to decide is not whether it is or is not public on the date that the actions took place. The question for this Court to decide is whether there was a bona fide belief that my clients had a right to use this property. But if it's not a public forum, they don't. I'm sorry? Go ahead. No, no. I defer to my colleague. If it's not a public forum, how do they have a right to exercise their free speech? Under Arizona's law, any dispute between two parties as to the use of land creates a civil right to enforce, but not a criminal right. Right. But we're talking the First Amendment. And it's got to be a public forum, right, for them to prevail here. Right. And the public forum is that this is a road, a well-used road, that had been used since the 60s. But, Counsel, my notes indicate that you did not challenge the town's abandonment of the easement in front of the District Court. Are my notes correct? That's correct. But that's because the judge himself, in his motion to dismiss ruling, said that he would not go into that issue. So the law of the case, as we moved into this motion for summary judgment, was the judge saying, we will not determine this issue. So when I responded to that motion for summary judgment, I responded to it as though that was a decided matter in this case. He had a motion to dismiss and a ruling with the judge saying, I'm not going to determine whether the abandonment was legal or lawful. So is this where we are in this, that we have no judicial resolution about whether or not this is a valid public easement on the date of the arrest? And, two, we will never know the answer to that question because you settled it in some alternative means. I wouldn't necessarily say that, Your Honor. I would say that ---- Well, I mean, we're not going to get a judgment as to whether on the date of the arrest, whether this was a valid public easement or not, right? Right. We'll never hear that. We don't know. Right now? Right now, we don't know. You're absolutely right. But the ---- Right. And that's the uncertainty. If there is a potential that it was a public forum and my clients had a bona fide belief that it could be a public forum, then under In re Juvenile, the only remedy that the State had was to challenge in silicort or the only remedy for the developer was to challenge in silicort and try to prevent the public outcome. Okay. But this is ---- You're making a constitutional argument, are you not? And there is no constitutional right to protest on private property. Well, that's presuming you make the factual determination. Remember, we have to look at all facts in favor of my clients. If you make the factual determination right now that this was private property and could never have been deemed to be public property ---- It seems to me that perhaps you're very adroitly trying to shift the burden of    I'm not sure that that's the case. So you have to establish that it was public property? The burden is ---- In other words, to pursue your First Amendment right, you have to establish that they were protesting on public property or a public forum. Well, one way to look at it is to look at the Venetian case out of Las Vegas where a private sidewalk was used for the public purposes. In that case, that's a similar situation to here. We have private land with areas that were dedicated to public use. And picketing was allowed and authorized in front of the Venetian in that case. The same type of thing happens here. You have to go forward and have that belief. If you don't have the belief, then you're dead in the water. Right. But, I mean, you can't just have a belief and then go on private property and protest. I mean, it has to be subjectively, not only subjectively extant, but objectively reasonable, I would think. Yeah. And it is objectively reasonable. You know, the Venetian is a completely different case because you have a sidewalk that's been dedicated to public use. As I understand it, there's nothing in the record other than what happened to your clients that this was ever used as a public forum for picketing or any other activity prior to this incident, right? Well, as far as we know from the record. As far as I know, I think that's correct. But I think that it was because it became There's no history of First Amendment activity. Well, it became a public issue in the public's eye when the town tried to take away the public's rights. And that's when the picketing began. So once the city You're talking about after the development had already been constructed? I'm sorry? I mean, after the development had been constructed? I mean, the gated community was constructed all around this. Well, the Court is unfamiliar with this area. This gated community, I believe, has four houses in it and is composed of hundreds of acres of land. Yeah, no, I get it. Okay. McClintock's is a restaurant There may not be a lot of houses behind the gates, but they're gated, right? Well, they put a gate up, but they had also in their original documents had the And finally, it comes down to, did the officer have a reasonable basis for making the arrest here? And if you've got a situation where a town manager calls the chief of police at home and says, I want this guy cuffed, arrested, and taken to jail, and the chief of police calls up his subordinate, Lieutenant Jimenez, and says, I want this gentleman cuffed, taken to jail, somewhere along that line, somebody has to say, why? What has he done? What's the purpose? You don't just say What they said was trespass, but does it make a difference if there was probable cause to arrest Mr. Blomquist for trespass, but maybe not to arrest him for disorderly conduct? Does it make a difference? It does. I mean, you can't the town attorney had issued a directive to the police department that you will not arrest somebody for trespassing. What happened was is they added in the disorderly conduct in order to allow the justification to take him to jail. And that is in the record that I supplied to you. And this court can see that what was done was not disorderly conduct. The audio tape clearly shows that Mr. Blomquist was pleasant the entire time. He was pleasant when the police officer approached him. He got confirmation that the officer was not doing it under his own discretion. He was doing it at the direction of an officer who was not there. Nobody reported to dispatch or to anyone else that he was acting disorderly. And it's not present in the police report. And that's the sole basis for his disorderly conduct charge and the sole justification that allowed this officer to take my client to jail. And unless the court has any other questions, I'll save one minute for very well. Counsel, you may do so. We'll hear from the town. May it please the court. I'm Andrew Peterson. I represent the town of Marana and its officers. There was probable cause to risk Mr. Blomquist for coming on to me. No? Blomquist. I don't think that's a fatal error, counsel. It looks Swedish to me, so I'll say Blomquist, flower branch. There was probable cause for his arrest on November 13th, 2009. He was there. He came into McClintock's. He had this longstanding dispute with Sorrel Ranch. He wasn't there just to have a beer and celebrate the dismissal of the prior citations. He was there as a protest. If he wasn't there as a protest, then where's the First Amendment claim that they keep arguing about? He was arrested because, as Irv Schultz noted, he'd come in there, they'd taken the beer away. He reported to Officer and he refused. And then look at the exchange. Look at the exchange that they recorded. I mean, the whole thing is staged. He's wearing a wire. He's being videotaped by another of the protesters there. He's inviting this arrest. That's why he's there. In fact, this happens the day after. But even if you're inviting the arrest, you still have to have probable cause. Absolutely. And he knows. He knows. If you look at the record, our supplemental excerpts of record number 55, where the town attorney is telling these folks after they abandon the easement, if you go out there, you're subject to arrest. He knows that. He's trying to escalate it. What is the effect or counsel for the appellant seems to indicate that they really didn't. I'm not quite understanding. They really didn't concede that they're not, that they did not challenge the repudiation of the public easement. They're just saying the court said it wasn't an issue? Your Honor, I have not understood that argument from the beginning of this litigation because initially when they filed the Federal lawsuit, I said, wait, you've got a State lawsuit pending where you're trying to argue about whether this abandonment was proper. I mean, it doesn't have to be some resolution. But it doesn't have to be a resolution.    So it's not in the position, their position, the position they took, was that doesn't matter. It doesn't matter to the civil rights case. They can pursue this case regardless of the validity of the abandonment. I mean, we have the town's resolution abandoning the easement. There is no more public right up there. None, after that abandonment. And that So is it in your position that that resolves the issue? Yes. So don't keep us in suspense. What's the settlement in the case? Are you getting an alternate easement or what do you have there? We gave We'll never know after today. Okay. The town gave nothing. We just agreed not to pursue them for fees and costs. They reached an agreement with Swarrel Ranch to give them some limited access into the Swarrel Ranch development. The town did not No, no. I gather they have some sort of a right to go through the Swarrel Ranch up in the mountains, correct? They have. The Swarrel Ranch has given them that right. But the public entity has not. They have to go to the Montauk restaurant. And go to the restaurant? No, but I mean, isn't the path or whatever has just been diverted around the restaurant, I assume, right? It has. In fact, when the community was the Swarrel Ranch was developed, they redid those roads in there. They make nice paved roads in there. The old Jeep trail is where the public easement was originally dedicated. It was just dedicated by homeowners up in that area who wanted access to their properties. In fact, if you look at the Phil Perry's affidavit in this case where he talks about how they actually, the homeowners up there had blocked it off. They gated it at the top and bottom. And your question, Judge, about whether this was a public forum, this was never a public forum. Well, I guess the odd thing for us is that, one, you have your position as it's abandoned, it's been extinguished. There was no, on the date of the arrest, there was no public right to be there. Their position is you acted improperly, you meaning the town. You had limited rights. All you got was a quick claim deed. And the public on the date of the question had a right to be there. It seems to me that's of some marginal importance of who's right on that. Well, if their challenge, if they had been successful in their challenge in state court, they may have that argument. But, you know, I think you can't undo the resolution by the town council. And that's what Judge Burry's concern, a district court. What he was saying really was I'm not meddling into that. I'm not getting into whether or not we can over, I as a federal judge am going to overturn the town resolution, abandoning the easement. Initially, their challenge was, well, you didn't have the right to do it. And then when we pointed out, in fact, the day that we filed the motion for judgment on the pleadings, the day after that is when he went into McClintock's. And we pointed out in the motion for judgment on the pleadings in the state case that, you know, we've got 114 years of Arizona law that says we have the right to abandon the easement. In the trial court, in the state case originally filed, said as much as well. He, his ruling was I'm not sure what the town's going to do here. The town has a right to abandon it and see what you do. And it's after then that the town abandoned the easement. Counsel, you heard my colloquy with counsel about what they represented to the district judge in this case so far as no pursuit of the right to abandon. What's your observation or comment on that? I'm not sure what you're asking me, Your Honor. My notes indicate that, in effect, they did not challenge the right of the city to abandon. In this case, not the other case, this case. What's your take on that? I guess that's my question. If that's their premise, then how do they have a right to be up there on that until they get it changed, get the resolution tossed out, which they have not done and which they will never do, until they do that? By what right do they have to go up there? Simply because they want, they don't like the resolution, or they think it should be challenged, or they think it should be a gift clause violation in the Arizona Constitution, or they think the statute that gives the town the right to do this is unconstitutional. That gives them the right to go on the property? I don't think so. It does not. The resolution stands. They have no right. They were warned not to go back up there, and yet they continue to do it. And it puts the officers in a bad position. We expect officers to act reasonably under circumstances. That's what the law requires. And here they're having constantly to go up there and deal with these folks. And these folks have a pending state court litigation where they're challenging the town's actions. They have a pending lawsuit. Rather than to let it resolve through that proceeding, they continue to go out there, and then it escalates to the point that Mr. Blomquist comes into McClintock's. Irv Schultz reports to the town. You know, they have a party planner there for an upcoming event. She had seen him out in the parking lot with his signs. Now he's in McClintock's. She's upset. They're upset. They certainly do not want Mr. Blomquist in the establishment. He's not an invited patron there. Well, so let's just assume that whatever the settlement is, in the future, maybe it could be a public forum. But you're arguing on that date it was not. That's correct. But this will never be a public forum. The developer bore a hole, a tunnel through the side of a mountain to get into this development. It's a high-end, exclusive, gated development. There's never going to be a... There's no public sidewalk within miles of this place. The Tortolita Mountain Park, the road, the public easement ends if you walk it about a mile before you get to the Tortolita State Mountain Park. If you're... If you can fly, it's shorter than that. But it's some distance. There's no... Let's talk about the officer. He arrested for both trespass and disorderly conduct. Is that correct? That's correct. Is it necessary to have probable cause for both of the crimes? Or if you have... If the officer had probable cause for one of them, is that adequate? I think it's probable cause for one. What's the difference? I mean, so as long as you have the probable cause to arrest him, you're arresting him, taking him into custody. But the disorderly... To say that he didn't have probable cause to arrest him for trespass because there was something that said you will not be arrested for trespass. Can you respond to that? That there was some... No, no. He's referring to... This had been going on for quite some time before the abandonment. And the town attorney before the abandonment had basically said, there's an ongoing dispute up there about this. And we're not going to be arresting for trespass. And they... In fact, in their briefs, they say they're not challenging any of those actions before then. What they're challenging is after the abandonment. And as I said, if you look at the town attorney email to Mr. Weeks, the plaintiff's appellant's counsel, that's our supplemental experts of 55. He's telling them, you no longer have. We're not... You no longer have some good faith idea that you can go out there on this easement. If you're up there, the town's abandoned the easement, you can be arrested at the officer's discretion. Okay. So the comment that he made was prior to the abandonment. Yes. I think that's what he was referring to. Because there's no doubt that after the abandonment, the town's position was, there is no public easement there. If you're out there, you can be arrested for trespass. Going back to your question about the disorderly conduct, you know, that statute requires seriously disrupted behavior. It did disrupt McClintock's. I mean, it disrupted him to the point that the manager on duty calls the town manager. Gilbert Davidson directly tries to get ahold of him because I think they were upset about Mr. Blomquist now taking the prostitutes into McClintock, onto the patio itself. Thank you, counsel. Anything further? Not unless you have any more questions. No. No further questions. Okay. Thank you. Mr. Weeks, you have some reserved time. Not a lot. I'll be very quick, your honors. Judge Scanlon, your last question about whether the policy had been abandoned, I believe that Mr. Peterson is incorrect. Officer Bennett testified in his deposition as part of the briefing materials that the policy was never rescinded, to his knowledge, even at the date of his deposition, which was after this case was filed. What about the email that counsel said you received? I didn't hear which email. I think I was writing notes. Well, I think it was an email subsequent to the abandonment saying you're going to be arrested if you go out there now. Right. That was an email that was sent right at the time of the abandonment, at which point we challenged that. My clients were arrested. They were taken or not taken, but they were charged and tried in Oro Valley. Oro Valley dismissed those criminal complaints of trespassing with prejudice because the town did not have a legitimate basis for what they were doing. The court actually said that you can't use criminal trespass statutes to enforce a civil dispute. And it was written in all three of the criminal citations. And one last thing is that the trial judge is a person who's allowed to make mistakes. That's why we have the appeals process. And that's why I thank you for allowing us to be here and to address you. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Thomas, Callahan